So we'll move to our first argued case for today, which is the number 2016-20, United States v. Kershner. We'll hear first from the appellant, Ms. Spinner. Good morning, Your Honors. May it please the Court. My name is Sydney Spinner, and I, along with my co-counsel, Steve Zizou, represent defendant appellant Gary Kershner in this matter. Your Honors, the judgment of conviction should be vacated and the matter remanded for a new trial, or in the least, a hearing, for the following reasons. First, the District Court abused its discretion in failing to hold a hearing, or at least to require an affidavit of trial counsel, before ruling on appellant's Rule 33 motion. Second, the admission of improper evidence in the trial court was not harmless to the appellant because the government's cooperating witness was found to be mentally incompetent and because of the ineffective assistance of counsel. As to my first point, the District Court abused its discretion in failing to hold a hearing, or at least to require an affidavit of trial counsel. This Court reviews a District Court's denial of a Rule 33 motion for abuse of discretion. Shortly after the trial, appellant faxed a letter to the Court expressing his concern about his trial counsel and requesting that new counsel be appointed. Judge Vitaliano denied this Rule 33 motion without a hearing or requiring an affidavit of trial counsel. This Court, in Sparman v. Edwards, held that an assertively ineffective attorney should have an opportunity to be heard and to present evidence in the form of live testimony, affidavits, or briefs. Then, this Court, again in Puglisi v. United States, held that the judge may properly rely on his or her own knowledge of the record and may permissibly forego a full hearing and instead request letters, documentary evidence, and affidavits to aid in its resolution of a claim. It's important to note, in this case, none of those things were done. There was no hearing and there was no affidavit required of trial counsel. This Court, in Razor v. United States, said that… Are you saying we're required to get an affidavit of trial counsel? I mean, the passage you just read said that the trial counsel has a right to defend him or herself, but there was a determination that trial counsel was not ineffective. Your Honor, trial counsel is not required to submit an affidavit, but the Court is to either have live testimony, affidavits, or they should hear from trial counsel. What evidence did you put in with respect to prejudice in order to entitle yourself to a hearing? Your Honor, the appellant submitted a letter detailing all of the issues that he had with trial counsel. Well, in the letter he says the trial counsel didn't prepare enough, but obviously that can't create prejudice unless you actually show that it had an effect on the proceeding, right? Yes, Your Honor. And then he also says that there were these witnesses that trial counsel should have called, and he speculates that those witnesses would have offered testimony in his defense. That would have helped him, but we don't actually know that, do we? Correct, Your Honor, we do not know that. But this Court has held that investigation in DeLuca v. Lord that you needed to adequately investigate, prepare for, and advise the appellant of a possible defense. And in quoting Strickland, strategic choices made after thorough investigation of law and facts are virtually unchallengeable. But here, there was no investigation. The lawyer, to our knowledge, did no investigation at all and presented no evidence on appellant's behalf. Well, strategic choices after thorough investigation of law and facts are virtually unchallengeable. That doesn't mean that even if you don't do a thorough investigation, you necessarily get to challenge it. It just means then we'd look further to see whether there's prejudice. And so the question is, what is the prejudice here? What's the evidence that would have changed the outcome of the trial? Your Honor, the witness testimony. I guess my question is, if we agree with the proposition you're urging, aren't we effectively getting rid of the prejudice element of Strickland? I'm sorry, I don't understand your question. Aren't we relieving you of the obligation to show prejudice if we agree with your argument? Yes, you are, Your Honor. Okay. Well, I think your argument is actually that you think that this witness testimony that he failed to put on would have led to a different outcome in the trial. But I think you just also agreed with me a moment ago, we don't actually know whether the testimony would have been exculpatory. That's just the defendant's speculation. Which is why it should be remanded for hearing, Your Honor. Because if the defendant can speculate that there might have been testimony that would have been exculpatory, you are entitled to a new hearing? I mean, isn't the standard higher than that? Don't you have to actually show there was prejudice, not just a theory that there might have been, and then get a new trial? Well, Your Honor, because we haven't heard from trial counsel, we're not fully aware of what he did or did not do. But what would trial counsel say that would change our view of the case? Do you think he would say in an affidavit, well, yes, actually, there was this exculpatory testimony from this witness, and I just decided not to put it on? But, Your Honor, his failure to interview any of the witnesses that the defendant had requested he interview is the heart of the issue. Because we don't know what they would have said. Is there anything that would have prevented current counsel, the replacement counsel, before presenting a motion for a new trial based on ineffective assistance from conducting that investigation and putting forward affidavits from the witnesses who were not approached and interviewed? No, there's nothing that would have prevented us from doing that. No doubt I'm missing something, but was an affidavit from trial counsel solicited? No, it was not, Your Honor. But why not? I mean, that would have been the easy way, wouldn't it? Yes, Your Honor. As to my second point, the admission of improper evidence in the trial court was not harmless to appellant because the government's cooperating witness was found to be mentally incompetent and because of the ineffective assistance of counsel. Evidentiary rulings are subject to harmless error analysis, and this court will uphold a verdict in the face of an evidentiary error when it is highly probable that the error did not affect the verdict. This court in Garcia held that reversal only occurs if an error affects a substantial right, meaning the error had a substantial and injurious effect or influence on the jury's verdict. In the co-defendant, Saha Chauser's, appeal, this court held that while there was an abusive discretion, the evidentiary errors were harmless due to the substantial admissible evidence, including the accomplice witness's testimony of Jola and Manfredonia. On May 19, 2021, the trial court concluded after a hearing that cooperating co-defendant, Joseph Manfredonia, was not competent to understand sentencing and the sentencing was indefinitely postponed. This strongly suggests that there is a mental health issue that was not disclosed that may have been present at trial. Agent Dengler's testimony was held to be harmless because of the cooperating witnesses corroborating his points, but with this issue of Manfredonia being incompetent, that creates a larger issue here as to the entire case. What do you contend is the most powerful evidence that was received that prejudiced your client and that was received improperly? The testimony of the case agent. About what? Can you be a little bit more specific? He testified to appellants lying to him in phone calls, as well as— Where he said that your client was lying, and so you're saying he characterized him as being untruthful, and that was improper. Wasn't there lots of evidence of him being untruthful? Don't we have recordings of him saying he's going to falsify corporate documents and so on? Yes, we do, Your Honor. So then why isn't it harmless, even if that was erroneously admitted? Well, I think that goes to the fact that the ineffective assistance of counsel, there was no evidence presented, so it's hard to know how much weight the jury gave to the testimony that was improperly admitted. Yeah, but usually we do an analysis as to whether there was enough evidence of untruthfulness to render the improperly admitted testimony harmless, right? So it's our job to look at whether there was sufficient evidence, and you just acknowledged that we have these recordings of Kirshner talking about falsifying documents and not being honest, right? All right. Yes, Your Honor. Okay. Well, you've reserved time for rebuttal, so we'll hear from you again. Why don't we turn to the government, Mr. Pollack. Thank you, Your Honor. Thank you. May it please the Court. My name is Robert Pollack, and I represent the United States on this appeal. Gary Kirshner was convicted at trial on the basis of what the district court called a mountain of evidence. The district court characterized that evidence as, quote, voluminous, comprehensive, and overwhelmingly incriminating. That evidence by itself, and I think even construing Appellant's arguments very generously, is dispositive as to most of the issues raised on appeal. The one exception is the Joinder issue, which was waived by not being raised below, and which, in any event, seems to be premised on some misunderstandings of the charges and facts of the case. Well, so about the Joinder issue, so assuming that it's not waived and we would address it, what's the logical connection between the line to the FBI and the penny stock scheme? So Mr. Kirshner told two lies about a company, Nikron, which was, as the government proved at trial, was one of the companies which was the subject of the pump-and-dump scheme. Most of these companies seem not to exist at all. Nikron, as the government acknowledged in trial, had more of a – seems to have more of an existence than the other companies, but is very thin in existence. It was essentially uncontested at trial that the stock was worthless. So when we say that there needs to be a logical connection, we're really saying that it's enough that he's lying about the same subject matter, not that the line to the FBI was part of the penny stock scheme. Is that enough? I think it is enough when he was lying to the FBI to throw the FBI off the trail of the penny stock scheme. The FBI asked him whether Sandy Winnick was involved. Sandy Winnick, as the government proved at trial, was the mastermind of these schemes and was already being investigated, as everyone knew at that time. So by saying he wasn't involved, he's trying to throw the FBI off the trail of the penny stock scheme. And similarly, when the FBI asked him about the stock issuance and he said this is issued for debt, that was trying to make sure that this issuance of stock was seen as less suspicious, trying to legitimize the fraudulence. Is it possible that having the charges proceed together prejudices defense on the other charges because you're saying he lied to the FBI at the same time he's saying that he was acting honestly and trying to mount that defense? Well, I mean there's an argument that any joinder of offenses is going to have some prejudice, as this court has acknowledged. The question is whether there's undue prejudice. I think here the sort of inflammatory nature of the fraud itself victimized people. There are victims who testified at trial who lost a huge amount of money. Overall, the fraud was— And I suppose his defense to both is the same, that he was acting honestly and that they were legitimate businesses, right? That's right. The evidence of the—supposing this was separated out for a different trial just on the false statements, the evidence that proved that those statements were false was going to be redundant of the evidence that was proving the substantive offense. Yeah, that was going to be my question. Assume that there was no false—separate false statement charge in the indictment. Would the evidence have come in on the substantive offenses as consciousness of guilt or any other reason? I think it certainly would come in as consciousness of guilt, and that goes to the defense that he made at trial, notwithstanding appellant counsel's suggestion that it wasn't made well enough, which was a good faith defense. The centerpiece of trial, the centerpiece of the government's case, were the recordings of his own voice, both contradicting what he told to the FBI, directly contradicting what he told to the FBI, and also saying things like when one of his co-conspirators said he didn't have a name to suggest for a corporate officer, saying, okay, I'll make one up and it'll probably be an illegible signature, or saying after he was called by the FBI, saying we're getting lots of heat and they got the FBI in it now, but he reassured his co-conspirator that the old friend of his who was posing as a corporate officer is, quote, not going to blab or anything. It is uncommon to have recordings of the defendant's own voice making statements that reflect such a strong consciousness of guilt, which truly undermines a good faith defense. And so opposing counsel mentioned, and I think you acknowledged in your briefs, that it was improper to elicit the testimony characterizing him as untruthful. That's right. But is this the evidence that would show that it was harmless because you have all of this evidence of him engaging in untruthful conduct or contradicting his statements to the FBI and so on? That's exactly right. Asking the FBI agent whether those statements were honest was improper. The prosecutor should not have asked that question and the court should not have allowed it. But this is not the kind of testimony which sometimes warrants great concern. For instance, testimony that's very technical or where a case agent is decoding coded language and where there's a great risk that the jury might simply defer to the expertise of the case agent and substitute the agent. We have said sometimes that FBI agents or officers have a special credibility with the jury and so it's problematic if they characterize the defendant in that way. It is certainly right that the question should not have been asked and it should not have been answered. My point is only that when the question was were these statements honest and the jury has the statements themselves, recorded statements, and also has recorded telephone calls of the defendant and documentary evidence showing right on its face that those statements are false. I submit there is a de minimis risk. It's practically inconceivable that the jury would simply say, oh, we'll defer to the FBI agent, that that was dishonest, rather than looking at the statement and looking at the evidence that it's false. It's very, very clear. It's not like, for instance, the evidence about the internal structure of Moneyline, which the government conceded in Sahar Chassery's appeal, the co-conspirator and co-defendant at trial in his appeal, where it was technical and a jury might just simply trust the agent. The government conceded that was error. The government argued it was harmless error, and this court agreed. So we said it was harmless, but also I guess the argument would be even stronger with respect to Kirchner because there was no testimony he was involved with. That's exactly right. Kirchner claims that his lawyer told him that he couldn't afford to investigate a potential conspiracy. Good faith defense. Would that negate the idea that it was a strategic decision? Well, I don't think it would. And the strongest evidence of that, perhaps, is the fact that appellate counsel, who's pressing that argument now, also represented Kirchner post-trial, but at the district court for quite a while. I don't remember now being his real appearance in 2018 or 2019. As the court elicited in my adversary's arguments, there was abundant time to do further investigation by current counsel, not just trial counsel, and no motion was ever made relating to a new evidence or testimony that should have been put on but wasn't. The only things, the only concrete things that appellate counsel proposes trial counsel could have done differently is put on character evidence, put on character witnesses who would testify that Kirchner is a good guy and doesn't lie, and put on more evidence that at least some of these companies have legitimate evidence. And that was, in fact, the defense that was pressed at. So the government's argument is that it might have been a decision that fell below professional standards, but there'd be no prejudice. There's certainly no prejudice. I think it did not fall beneath professional standards either, although the court doesn't need to reach that, because as Judge Italiano held at the district court, even assuming that all of those statements are true, there couldn't be prejudice. So Judge Italiano didn't even reach it. Appellate counsel says in the brief that without an affidavit or a hearing, the trial court must accept these allegations as true. And that's exactly what Judge Italiano did, at least argumentatively. Instead of assuming these allegations are true, the evidence was simply so overwhelming, including the evidence of consciousness of guilt, which the court has already alluded to. Well, I guess we don't know exactly the extent of the testimony that would be offered about the companies being legitimate businesses. I mean, if they were so legitimate that they actually did activities that corresponded to the documents and so on that Kirchner generated, I guess that would be a defense, wouldn't it? I think it is not plausible that, for instance, a company that purported in a press release that Kirchner wrote purported to have $100 million contracts actually had $100 million contracts that nobody could find. I don't think there's any possibility to that. What he could have done is he could have put on multiple witnesses to testify to his character. He could have said that some of these other companies had a sort of thin existence of the type that Nikron had. Nikron was a company that the government acknowledged, I think even in the summation and rebuttal, was sort of the most real of any of these companies. But it seemed that it owned a patent. The government contended that it was a worthless patent and put on evidence of that, but that it had some kind of existence. He could have put on evidence similar to that as to other companies, perhaps, if such evidence existed. But as Judge Vitaliano held in denying the motion, that does not speak even a whisper to the fundamental issues here. It doesn't change the fact that he falsified documents. It doesn't change the fact that he spoke openly on reported telephone calls about falsifying documents. It doesn't change the fact that the purported head of two of these companies testified, once he received testimonial immunity, that he didn't sign any of the documents that purported to carry his signature. He didn't make any of the statements that were purported to be his statements. He didn't really know anything or have any role in the company that was supposedly headquartered at his house or at his former address. So, in sum, this fraud that the defendant with his co-conspirators perpetrated was not subtle. It was a brazen fraud. Kirshner's role in it was brazen. The evidence is overwhelming. And that is essentially, with respect to his co-conspirator, what this Court held in affirming that conviction, a stop at chaucery, in a summary order, and the same outcome should be the result here. I also briefly want to address, since appellate counsel raised it here for the first time this morning, the suggestion that one of the cooperating witnesses is perhaps mentally incompetent. Last week, they asked if we would consent to filing a docket sheet. Of course, we have no objection to filing an additional docket sheet here. We didn't hear anything from them inquiring about the underlying seal of the documents related to the finding that one of the witnesses, and defendants in this case, has been found incompetent to be sentenced. I can represent to the Court that the underlying sealed documents relate to a condition that conclusively postdates the trial. They raise no concern that he was not competent at the time of trial, and I'm happy to file a sealed letter elaborating on that. Is that before us? The only thing that appellate counsel filed is the docket sheet, which on its text refers to a finding that that cooperating witness and defendant, Dan Fredonia, was found incompetent to be sentenced and ordering his counsel to file annual updates on his health, assuming that one day he may become competent again. But is that something we have to decide in this appeal? Well, it was raised for the first time just now, so I don't think it is. And there has been no suggestion until this morning that that in any way could have been an issue at trial. There's nothing on the docket to suggest that there's been an effort to— So I think that we will confer about it, and if we want additional letters or something, we'll ask for it. But as of now, I think we're not requesting that. Understood. I see my time is up, unless the Court has any further questions. I'll rest. Okay, thank you, Mr. Pollack. We'll turn back to Ms. Spinner on rebuttal. Thank you, Your Honors. I just wanted to point out two things about what my adversary said. He brought up the failure to sever counts and that we waived that. It's our position that it was not waived. And that the trial counsel's failure to move to sever the counts, there's no possible strategy that would support that, which goes to our ineffective assistance of counsel claim. And the other point I wanted to clarify, there were statements— So you're saying it was waived, but it was ineffective of trial counsel not to make a motion to sever. Correct, Your Honor. And the other point I just wanted to clarify, there were statements of potential witnesses submitted with the Rule 33 motion. And they would support the good faith defense that the companies were operational. Well, what about the argument that the government just made and that the district court also made, which is that even if they were operational, it wouldn't establish that he didn't commit fraud by creating false documents and making claims about the companies that weren't true. The district court explicitly acknowledges this. He says, well, maybe they were legitimate businesses, but that wouldn't mean that he wasn't still guilty of a fraud. You can use a legitimate business to perpetrate this type of fraud. Yes, Your Honor, this Court would conclude that. But for these reasons, the Court should vacate the judgment of conviction and remand the matter for a new trial or at least a hearing. Thank you. Thank you very much. The case is submitted.